

FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 4:21 pm, Jan 19, 2018*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

MATEO PEREZ,

        Petitioner,

    v.

TRACY JOHNS,

        Respondent.

CIVIL ACTION NO.: 5:17-cv-84

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Mateo Perez ("Perez"), who is housed at the D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.)  Respondent filed a Response. (Doc. 8.)  For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Perez's Petition **WITHOUT PREJUDICE**, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Perez *in forma pauperis* status on appeal.[1]

## BACKGROUND

Perez pleaded guilty in the United States District Court for the Northern District of Georgia to illegal reentry of deported alien, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Order, United States v. Perez-Maldonado, 2:11-cr-9 (N.D. Ga. Apr. 15, 2011), ECF. No. 18.  On June 14, 2011, the Honorable William C. O'Kelley sentenced Perez to 54 months' imprisonment.

---

[1] As noted below, the Court's review of this case raises questions regarding the calculation of Defendant's sentence which are not adequately addressed by Respondent's brief.  The Court need not delve into the merits of those questions given Plaintiff's failure to exhaust his administrative remedies.  However, given these concerns, I **ORDER** Respondent's counsel to provide a copy of this Report and Recommendation to the Section Chief for Sentence Computations at the Bureau of Prison's Designation and Sentence Computation Center.

J., <u>United States v. Perez-Maldonado</u>, 2:11-cr-9 (N.D. Ga. June 20, 2011), ECF. No. 27, p. 2.

Subsequently, Perez pleaded guilty in the same District to aiding and abetting a conspiracy to

possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii), 846, and

18 U.S.C. § 2.   Plea, <u>United States v. Perez</u>, 1:11-cr-264 (N.D. Ga. Mar. 28, 2013), ECF No.

398-1.   On August 23, 2013, the Honorable Amy Totenberg sentenced Perez to 135 months'

imprisonment.   J., <u>United States v. Perez</u>, 1:11-cr-264 (N.D. Ga. Sep. 6, 2013), ECF No. 499,

p. 2.   Judge Totenberg made clear that the Bureau of Prisons ("BOP") must give Perez credit

towards this sentence for all time Perez served beginning with his arrest on January 26, 2011. <u>Id.</u>

Additionally, Judge Totenberg ordered that the sentence should run concurrent with any sentence

Perez was already serving. <u>Id.</u>    On July 1, 2016, Judge Totenberg amended Perez's sentence,

reducing the term of imprisonment from 135 months to 121 months' imprisonment.   Order,

<u>United States v. Perez</u>, 1:11-cr-264 (N.D. Ga. July 5, 2016), ECF No. 674.   However, Judge

Totenberg ordered that all other provisions of the September 6, 2013 judgment shall remain in

full force and effect.[2]

---

[2]  The Court has concerns as to whether the BOP adhered to Judge Totenberg's Order when calculating Perez's sentence.  The BOP indicates that Perez's full term expiration date is May 6, 2023. (Doc. 12-2, p. 23.)  However, based on the Judgements from the Northern District of Georgia, the full term expiration date (excluding any good conduct credit) would appear to be February 26, 2021.  Perez was sentenced to 121 months' imprisonment, with credit beginning January 26, 2011, to run concurrent to his prior sentence.  (Doc. 12-2, p. 12.)  Calculated from January 26, 2011, (as Judge Totenberg ordered), 121 months would run on February 26, 2021, not May 6, 2023.  Of course, Perez's much shorter 54 month concurrent sentence expired well before that date.

However, according to the affidavit of Kneyse Martin, a Management Analyst for the BOP, the BOP inexplicably "aggregated" Perez's term of imprisonment to 147 months and 9 days after supposedly taking into account the concurrent nature of his sentences.  (Doc. 12-2, p. 3.)  This number is, of course, significantly higher than the 121 month sentence imposed by Judge Totenberg, the lengthiest of the concurrent sentences Perez received.  Martin's affidavit provides no explanation as to why the BOP "aggregated" concurrent sentences or how it arrived at the number of 147 months and 9 days.

Unfortunately, Respondent's counsel does no better.  Respondent's Response brief provides no explanation whatsoever of the calculation of Perez's sentence.  While the brief includes a section arguing that the Court should accept and rely upon the BOP's calculation of Perez's sentence, (doc. 12, p. 7), counsel fails to offer the slightest explanation of that calculation.  It is certainly possible that the BOP has a valid explanation for its sentence calculation.  Unfortunately, counsel did not see fit to include that

Perez filed his Petition on June 19, 2017.  (Doc. 1.)  Perez asserts that the BOP improperly calculated the service of his August 23, 2013 sentence.  Id.  Specifically, he contends that the BOP failed to give him credit for time he spent in custody on his federal charges from June 14, 2011, to August 23, 2013.  (Id at p. 8.)

On September 7, 2017, Respondent filed his Response, arguing that Perez failed to exhaust his administrative remedies prior to filing his Petition.  (Doc. 12, pp. 4–6.)  Moreover, Respondent contends that Perez is not entitled to the credit he requests in his Petition as the BOP properly calculated his sentence and gave him credit in that calculation for the time he now seeks.[3]  (Id. at p. 7.)

**DISCUSSION**

**I.      Whether Perez Exhausted his Administrative Remedies**

**A.      Legal Requirements for Exhaustion**

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'"  Id. (citing Santiago-Lugo, 785 F.3d

---

explanation in Respondent's brief, and the Court is left to guess at why the BOP seemingly intends to imprison a man for 26 months and 9 days longer than a federal district judge ordered.

[3] Respondent's counsel mistakenly titled this Section of the Response, "Petitioner Received Procedural Due Process During the Disciplinary Proceeding."  (Doc. 12, p. 7.)  Counsel's inattention to this pleading is evident and unfortunate.

at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[4]

---

[4] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6,

The Supreme Court has noted exhaustion must be "proper."  Id. at 92.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion.  Jones, 549 U.S. at 218.  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit.  Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.  Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a prisoner who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B.     Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action.  Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted).  Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies

_____

2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus, exhaustion requirements are applicable to habeas petitions.

5

is a defense before the court.  Id.  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.  First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.  Id. at 1082.  If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

### C.    Analysis of Perez's Efforts at Exhaustion

Inmates at D. Ray James must exhaust their administrative remedies by beginning a grievance process locally through the contractor's grievance procedures.  (Doc. 12-1, pp. 2–3); see also, 28 C.F.R. §542.14, *et seq*.  This involves an attempt at informal resolution, which, if unsuccessful, is followed by filing a formal complaint filed on a BP-9 form with the Warden. (Id.)  An inmate may appeal the Warden's response to the inmate's complaint by filing a BP-10

form with the Regional Director.  (Id.)  If the inmate is still dissatisfied, he may then make a final appeal to the BOP's Office of General Counsel using a BP-11 form.  (Id.)

The evidence before the Court reveals that Perez did not pursue his claims through D. Ray James's administrative remedies process before filing this action.  Indeed, according to the Affidavit of BOP Administrative Remedy Clerk Glenda Dykes, Perez did not file any administrative remedy forms before filing this lawsuit.  (Doc. 12-1, p. 3.)  Documents from the BOP's Sentry database confirm this assertion.  (Id. at p. 10.)  Therefore, it is apparent that Perez failed to properly exhaust his available administrative remedies prior to filing this Petition.  Consequently, the Court should **DISMISS** Perez's Petition **WITHOUT PREJUDICE**.[5]

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Perez leave to appeal *in forma pauperis*.  Though Perez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

---

[5]  I note that if the Court rejects the recommendation that this matter be dismissed, the Court will need further argument and documentation to resolve the substance of the parties' positions.  Specifically, as pointed out in footnote 2, *supra*, the Court would need further explanation as to the BOP's calculation of Perez's concurrent 121 month sentence.

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Perez's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS WITHOUT PREJUDICE** Perez's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Perez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of January, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA